The next case today is Amy Lestage v. Coloplast Corp. Appeal Number 19-2037. Attorney Theodore. Good morning, Your Honor. Elizabeth Theodore on behalf of the appellant Coloplast, and I'd like to reserve about three minutes for rebuttal. Yes, you may have it. Thank you. I'll start with why the court should reverse and grant judgment to Coloplast and then turn to our new trial arguments. So, first, Coloplast is entitled to judgment because the plaintiff failed to prove that retaliation was the but-for cause of either her placement on a fully paid leave or her account assignments when she returned. The correct standard is clearly but-for causation in Nassar and Gross and many other decisions. The Supreme Court has said that it's actually banning retaliation. Excuse me, counsel. You've got a problem getting to but-for causation since the judge charged a different standard of causation and no contemporaneous objection was made to the charge. Your Honor, that means that our new trial argument based on the jury instruction is subject to plain error review, but it does not affect the court's review of the Rule 50 motion, and we've cited two Supreme Court cases and multiple Court of Appeals cases saying that a failure to object to a jury instruction does not mean that... Ms. Theodore, when I read your brief and then I read your opponent's brief, I was astonished that there was no disclosure in your brief of the lack of objection to the instruction and furthermore, an agreement to the instruction. That type of game-playing with the Federal Court of Appeals is not in order, all right? Now proceed with your argument. You have a plain error argument as to instructional error and you have an argument as to sufficiency of the evidence. Respectfully, Your Honor, if I could just address that, we did not intend to mislead the court at all. We cited the plain error standard in our opening brief and said that the error affected cold plastic... Counsel, move on. Thank you, Your Honor. Okay, so... Counsel, just so you know what I would like you to address as you respond to the inquiry, it seems to me there's little doubt, just speaking for myself, that the substantial motivating factor of instruction was incorrect, although both parties seem to agree to that. But how can you argue when we seem to have... Can you hear me, Counsel? I couldn't. You were breaking up, but I'm sorry, Your Honor. I'm sorry, yeah. My question is simply this. How can you... I started to say, I think, speaking only for myself, the instruction seems to have been wrong, for sure, but how can you argue that it was plain, given that we had a precedent, a 2004 precedent, in a false claims act case that seemed to suggest that the instruction was appropriate? You have a split among the circuits as to what was the appropriate instruction. It's a somewhat unusual circumstance, but that seems to me exactly the kind of situation where it's very difficult to argue that this error was plain. So I'd like you to respond to that as you work through your... Absolutely, Your Honor. So with respect to the court's prior decision, even if you think it held that a substantial factor, instruction was the right instruction, and Gasser and Gross and the Supreme Court's decision saying that it insists on but-for causality and statutes using the term because of, all of those decisions post-dated the Karvelas case that Your Honor is referring to, and it's very clear that in deciding whether an error is plain, you look to the current state of the law, and the plaintiff, in her brief, she hasn't offered... You had circuits post the Supreme Court decisions, and the Supreme Court decisions did not deal with the False Claims Act, so looking at, you can criticize this, disregarding the text and looking at specific legislative history that suggested that a different instruction was appropriate. So that's, again, that's part of the background at the time that the court was deciding what the instruction should be. Isn't that true? Well, Your Honor, none of the courts of appeals that have said that a motivating factor is not implied, actually considered Gasser and Gross, and if you look at the Nesbitt decision from the 11th Circuit, it goes through all those decisions and explains that none of them actually considered the text of Gasser and Gross or explained how you could come to a motivating factor test in light of Gasser and Gross, and so, you know, the question is just whether it's obvious in light of the Supreme Court's current decisions, and given that the Supreme Court in Burridge said that it insists on but-for causality in statutes using the term because of, I think the error is plain under that decision. Wasn't the 11th Circuit decision decided after these instructions were given? It may have been, Your Honor, but the question about plain error... Well, that was the first clear statement that the cases which had not concluded a but-for instruction was required. That was the first clear statement that they were wrong because they hadn't applied the two Supreme Court cases, and we had not addressed the issue, and I tend to agree with you that that was not a holding in our Caravallo case, but in the absence of any First Circuit law and in the absence of trial counsel even realizing that these Supreme Court cases may have dictated a different instruction, it's a little hard to blame the trial court for not doing the job that trial counsel should have done. Well, Your Honor, the law is clear, and we've cited a case in our brief for this proposition that when you evaluate plain error, you consider the state of the law as it is at the appeal, not just at the time of trial. Five minutes remaining. Okay. Do you want to get to your sufficiency argument, please? I would like to. Yes, thank you very much, Your Honor. Under the but-for standard, which undoubtedly has to apply for the sufficiency argument, no reasonable jury could find Koloplast liable. So as to the placement on paid leave, the plaintiff stipulated that the placement on leave was, quote, in response to Byram's request to have her removed from its account, and, you know, we argue that that stipulation alone forecloses but-for liability, but even putting that stipulation aside, there is simply no concreteness that retaliatory animus motivated Koloplast. It was faced with a difficult situation where it had a letter from one of its biggest customers, this was a big deal, and it bent over backwards, to be fair, to the plaintiff here, in a way that's just irreconcilable with any notion of retaliatory animus. It placed her on a fully paid leave, 100% commissions, full benefits, free use of a company car and gas card, and, you know, the plaintiff has to have definite competent evidence. She can't just rely on speculation. Counsel, as to both aspects of her claim, one question, factual question we're curious about is, weren't there other accounts that could have been assigned to her, both when she was put on the leave and then later when she comes back, and what was the company's evidence on that? So, Your Honor, when she was put on the leave, there is no evidence that there were other accounts that she could have been assigned that would have replaced Byron, which was 80% of her book, and, you know, accounts are very relationship-driven. These are the most important accounts in the company, and so, you know, there's no evidence that Koloplast could simply have taken other people off of major accounts and reassigned. Yeah, but you keep saying there's no evidence as though that was up to the plaintiff. You're the party who knows that information. Did you put in any evidence that that was not an option? Yes. The decision-makers at Koloplast testified that they considered various options about what to do, but that given that Byron was such a substantial portion of her account, there wasn't an option to replace Byron, and, Your Honor, she bears the burden of proof. All of the accounts at Koloplast were fully accessible to her both in discovery and because she was an employee of Koloplast who knew what those accounts were. Okay, now when she comes back from the leave, I'm sorry, Judge Salyer. Well, I just didn't want that burden of proof statement to go without comment. It seems to me that when she was placed on administrative leave, all right, that it's not a, she has the burden of showing that the administrative leave is an adverse employment action, but if there was some alternative to placing her on administrative leave, who or the absence of an alternative? She would have had the burden of showing that the difference between, that there was an alternative and that the difference between that alternative and what Koloplast did shows retaliatory animus. That would have been her burden. Okay. So when she came back from the leave, she said that she should have gotten this ABC account back, but ABC specifically said it didn't want her back, and ABC was not a company. But didn't the situation with ABC change very shortly? The account manager that ABC preferred then became unavailable for ABC, and a new account manager had to be reassigned, and she asked for that account back. That's what I understand the record to say. Yes, Your Honor, and the testimony is that when that first account manager left, ABC, which had just gone through a merger with a California company, specifically instructed Koloplast to give it a California-based account back. That's at JA-941 and 942, and there's no rebuttal to that testimony. And beyond that, she hasn't identified a single other account that she could have been given or would have liked to have been given beyond the ones that she got. But we come down to the question of whose version. The court held... Judge Selya was asking you a question. Judge Selya. Yeah, I agree with you that the record doesn't show any alternative, available alternative, to the substitute accounts that she was given, but I again am struggling with the question of who had the burden. She shows, or offers evidence from which a jury can find, that the accounts given her are inadequate and can be viewed as part of a patent of retaliation. All right? Who has the burden of showing that there were some other better accounts that could have been given to her? Is that her burden? Or is that the burden of the company, which actually controls the accounts and knows what's available? It's her burden, Your Honor, and I would point you to your decision in the Velez case. And that case holds that plaintiffs in retaliation cases, in the analogous context of a failure to hire or promote, can't just offer an open-ended complaint, but they have to identify a, quote, identifiable position for which they applied, were qualified, and were denied. And, you know, the analogy here is that she had to identify a discreet alternative account that she wanted and that Coloplast didn't give her. It can't just be an open-ended complaint. It wasn't an open-ended complaint. The jury accepted her view that the reason she was put on the leave and the reason her accounts were diminished had to do with her filing the key Tom complaint against both her employer and the major customer. She had enough evidence to get to the jury on that. And a jury could have inferred from that that the reason was retaliation. At that point, you had the opportunity, your company, to put in defensive evidence that there were no alternatives available, but you didn't do that. You did provide an explanation as to the ABC account. But in the year she was gone, was there no growth in the company? Were there no new other accounts that could have been given to her? And, you know, I don't know if this was a strategic choice on the part of trial counsel, but it does seem to me that the gap in the record could have been easily filled by the plaintiff to fill that gap. And I don't think the case you just cited to us actually governs this situation. So do you have another case? I'm sorry, Judge. She just seems to have disappeared. We must have lost her in the last minute or two. I apologize. I'm going to see if we can get her back. I would like IT to please pause the stream for us. So here's where we are. We would like you to give us your last argument on the question of the absence of evidence as to there being no alternative accounts as to both time periods. And you have cited one case to us. I doubt that that gets you there. Are there other cases or facts from the record you want to call to our attention? Yes, Your Honor. First of all, there was testimony from Coloplast that the accounts that they provided to replace ABC were the best available accounts that they could give her. But that's judgmental when you say the best available accounts. Was there testimony that there were no other accounts available? Or was there testimony about any specific accounts that might have been available as alternatives? So I guess there was no testimony from Coloplast other than as to the ABC account explaining why specific other accounts were not given to her other than that they were already with other employees. But there was testimony that all of the new accounts that she received were growing. So there was real evidence in the record that these were good accounts that they tried to give her. But the jury obviously didn't believe that. They found against you on that. They found this was an act of retaliation, assigning her these accounts. Well, yes, Your Honor. And as we've tried to argue, the absence, it was her burden to prove adversity and it was her burden to identify other things that Coloplast has done. She had to prove that her accounts were objectively inferior. That's what the court held in the Morales-Fallegianis case. But see, that's where I'm at. I'm struggling with your argument. She does prove adversity. She proves to the jury's satisfaction and the trial judge's satisfaction that you've given her a roster of accounts that's inferior. The defense or a defense that you're offering to us and which you offered to the jury, you had, as I understand it, the defense that was made was that the accounts weren't inferior. But the jury rejected that. It seems to me a different issue as to whether to say that the accounts were the only ones that were available or the best ones that were available. And to do that, there would have to be evidence as to why there were no other accounts or what other accounts were available and why they were even more inferior. And I found no such evidence in the record. And I would think that the company, rather than the employee, would logically have the burden of adducing that kind of evidence on this issue. Well, and I think, Your Honor, if you look at the cases on material adversity that we've cited, they all put the burden on the employee to bear the burden of proof  or the treatment given to other people. If I could address the Daubert issue very briefly, Your Honor. No, before you leave that, we've got two different events here. She has convinced a jury that she was worse off as a result of each of the events. Are you saying that the comparator is not her status before she came back on the leave and that she had to show that she was worse off than others who got accounts?  In this context, yes, Your Honor, because as to the two accounts that she had before the leave, we did put in very concrete evidence that she couldn't get them back. That's ABC and Byram. And we explained why. Yeah, but Byram, the jury could easily have thought was retaliating and that your client cooperated in that retaliation. In fact, in some ways, joined it. So I don't see why the comparator event isn't her status before you all learned that she had brought a False Claims Act case. Well, Your Honor, she specifically said when she came back that she did not want to be put on the Byram account. There was a letter from her attorney. And I'll also point the court to the Arcanum case from the Tenth Circuit, which makes clear that the intent of another entity that's not the employer's agent, as Byram was not our agent, is irrelevant to the employer's motivation. That's not what I said. Your client could very well have been found by the jury to have cooperated with Byram in this act of retaliation. I don't think the Tenth Circuit case quite gets you beyond the jury findings here. In any event, do you have a final argument for us? Yes, Your Honor. Our final argument is that we're entitled to a new trial because the testimony of the plaintiff's damages expert, Dr. Roberts, was inadmissible. And the review here is de novo because there are no reliability findings on the record. And I want to focus on two aspects of Dr. Roberts' model that relied on assumptions that directly conflict with the factual record. And first is that to estimate but-for income, she cherry-picked the plaintiff's two highest paid years before she went on leave and ignored two years in which she earned substantially less. There was no reason to justification for this decision other than her assertion that perhaps plaintiffs didn't, quote, hit her stride until the 2013 and 2014 years, but she admitted at JA-348 that she didn't have a factual basis to say that. And what makes this decision especially unreliable is that the two highest paying years were largely driven by growth in sales to Byram due to the unlawful incentive payments that KeyTam targeted. And since plaintiffs concedes that she couldn't get Byram back, that that's not because of retaliation, it's completely unreliable to claim that her income but-for retaliation would be the same as if she had Byram. And then second, in calculating what the plaintiff's with-retaliation income would be as the average of her 2017 and 2018 income, Roberts simply assumed the answer to the very question she was supposed to prove. She assumes that the entire dip in the plaintiff's income is attributable for retaliation, and she admits on JA-847 that she didn't take into account any potential independent factors. And so this renders her testimony worthless. It's like a damages expert in a securities fraud case simply assuming that a drop in stock price on a particular day is entirely attributable to fraud rather than creating a model to explain how much of a drop was attributable. Ms. Theodore, may I ask, I assume both of these arguments were made to the jury. Is that correct? Those arguments were made to the jury, but the court's cases, for example, when Smith v. Jenkins, are very clear that the court has an independent obligation to assess reliability. And this court in many, many cases has held that when an expert fails to consider confounding factors, that renders the testimony inadmissible. Okay, thank you. Thank you. Attorney Theodore should mute her audio and video, and Attorney Wertheimer should proceed. Sorry, I... Yes, you may proceed with your argument. Thank you. I've lost you for a moment, but now you're back. Good morning, Your Honor. Rachel Wertheimer for the appellee amulet stage. I'll begin briefly because the court seems to have already noted the issue that the appellant here is asking for something extraordinary, which is for this court to reverse the trial court's, the jury's verdict based upon an issue that it not only failed to raise at the time of jury instructions, but that it also failed to raise in either of its post-trial briefs under Rule 58 and 50B, and then in its motion for a new trial, the question of but-for causation was not raised in any of those instances. And so even were this court to apply the de novo review standard to that 50A motion, that argument is still waived because only those arguments that are raised in a motion pursuant to 50A and then in a renewed motion pursuant to Rule 50B are preserved for appeal. And so then applying, even if the plain error standard were to apply here with respect to the jury instructions, again, as I think the court has already noted... Ms. Swarthimer, can I move you along? Let's assume, assume arguendo that the but-for standard might be applied to the sufficiency of the evidence. You've heard a lot of discussion about the lack of evidence about alternative accounts and who should have put in that evidence. Could you perhaps start addressing that and describing the record which you think shows that the evidence is sufficient even under a but-for standard? Sure. So, and again, there are two issues here, but first the leave and then the selection of accounts. But since Your Honor has asked specifically about the latter issue, I will start there. There was evidence in the record that there are approximately 45-50 key accounts from which Coloplast carefully, pursuant to a formula, selects accounts for each particular CAM. And those accounts are different from house accounts which typically do not have a substantial amount of growth, do not require the kind of marketing expertise and other skills that a CAM is expected to employ for the key accounts. And in this instance, when Ms. Listage returned from leave, not only did Coloplast refuse to put her back on the ABC account to which Ms. Listage testified that she had had an excellent relationship and that the account had performed extremely well under her leadership, but it then went on to assign her to a number of accounts that were these house accounts and did not select from among the other 45 accounts that were key accounts from which she could have been assigned to and that would have given her both the responsibilities, management responsibilities, marketing responsibilities, and the opportunity to grow those accounts and to earn the associated commissions. With respect to ABC, there was testimony that ABC requested that it remain with the that when when Ms. Listage first came back to work, ABC requested that it remain with the interim account manager who had been assigned to it when she went on administrative leave. Was that testimony contradicted in any respect? Well, there was testimony with respect to how that email which again was sent by ABC That's not my question. My question is is that testimony uncontradicted? The testimony that well, again, I think, Your Honor, it depends upon how one interprets that email. So there was some testimony that perhaps that email was not intended to mean that Ms. Listage that ABC did not want to work with Ms. Listage again. So and then, of course, Your Honor, But that's not the question. Did ABC say that it preferred to stay with the with the individual who was handling its account at the time she returned to work? Well, again, I think that's the question. But let's assume for present purposes that it did say that. As I think Your Honor has already pointed out, that individual, Henrik Werbler, almost, you know, very soon thereafter left Koloplass, returned to Denmark. At that time, Koloplass certainly had the opportunity to reassign the account. And despite you know, Koloplass counsel's assertion that, you know, there were other reasons based upon geography and the like that they did not they chose not to assign that. Well, let's be more specific. The Koloplass position, as I understand it, is that ABC said at that time that it wanted a cam who was based on the West Coast. Is that testimony in the record and is that testimony contradicted or impeached? I believe that Koloplass, that ABC may have said that that was its preference. I think that Koloplass has on many occasions staffed individuals to accounts outside of, you know, their specific geography and there was evidence in the record that Ms. Lestage could very easily travel to the offices to effectively service the ABC account. But again, Ms. Lestage's argument with respect to the account selection upon her return was in part based upon Koloplass, I think, sort of repeated refusal to assign her to ABC but was also with respect to the other accounts to which she was assigned which she testified and the jury clearly agreed were sort of substandard accounts, were not accounts that to which a cam would be assigned and were not accounts that she was able to grow at the rate that she had been previously in order to earn the salary that she had been earning and to sort of maintain the trajectory of salary growth that she had been given. And your view of the issue of whose burden it was to establish that there were other available accounts that could have been assigned and which would have been more satisfactory towards restoring her to her usual place? I think  sure I think Ms. Lestage had the burden of establishing that there were alternatives. I do not agree with Coloplast Council that she had to necessarily identify particular accounts for which she was suitable and for which she should have been assigned but I do think she had to establish and I think she did clearly establish that there were accounts available to Coloplast that Coloplast made the decision based upon what it testified was a sort of complicated number of considerations as to how it would assign accounts to CAMS in a way that was equitable, fair, etc. So Council if I've understood pardon me Judge Lopez we'll get to you next you said there were 47 to 50 key accounts and I take it that that is the evidence that you're relying on to say you showed there were alternatives and that your argument is by assigning her to house accounts and not key accounts this was retaliatory diminution of her position well yes your honor but it wasn't simply that there were 45 accounts there was actually discussion and testimony in the record where all of those accounts there was an exhibit and a witness that testified with respect to the identity of a number of different accounts how those accounts were assigned so it wasn't simply you know there were 45 accounts but there was specific testimony regarding particular accounts and who those were assigned so are you saying that the company even if all of those accounts were already reassigned to other people that they had to reassign them when she comes back from the leave well yes your honor and the company does do that kind of reassignment often as Coloplast's own witnesses testified that for example if there is a merger other things will cause them to reassign accounts it's something that they do and so certainly when she returned from leave she had to be assigned to some accounts and so they had to make some considerations to do that and so yes in effect they were required to assign her to judge Lopez thank you counsel I'd like to ask you about the retaliation issue as it relates to the administrative leave you're frozen but can you hear me counsel I can hear you am I still frozen hearing you is what matters acknowledging that it would be very unusual to do what the appellant is requesting that is apply a sufficiency analysis on the basis of an instruction never given but let's take the but for as a in response to Byron's request to have her removed doesn't that complicate any argument by its plain terms that seems to say that she was placed on administrative leave in response to that request that was the reason doesn't leave room for any other reason I think the key here is what the parties intended by that stipulation which is exactly what the court is to resolve the causation issue and what they meant when they used the term in response was the catalyst that caused Coloplast to look into why Byron was making this request and what action they should take I would note that Coloplast manager at 635 was specifically asked is it a fair statement to say it was the letter to you that caused Amy to be placed on leave and in response to that question he said it was the Byron letter that caused us to internally discuss what we should do about the situation that was clearly the intention of that stipulation which is why Coloplast Council did not object to evidence of causation coming in when Coloplast Council during opening statements instructed the jury that they were going to be asked to determine whether or not Coloplast decision to place her on leave was in fact caused by retaliatory motives. Counsel, I guess it would be your position that on the basis of the instruction that was given a substantial motivating factor instruction that this stipulation is less problematic for you because that formulation would give you room to argue that retaliation despite what the stipulation says was also a motivating factor. I guess that would be your position. Well, I think Your Honor, my position is perhaps a little bit stronger than that. I think that regardless of what standard the court were to apply whether it's but for or motivating factor that this stipulation at issue does not answer that Ms. Lestage was involved in some sort of protective activity and what it was going to do as a result of that. So, I don't think that the stipulation addresses what the cause of their decision was. It's really a question of what caused them to   decision. So, my argument is that for some of the reasons we discussed this error in the court's instruction was not plain. Yes, Your Honor. So, we think it's not plain because in Carvelis this court whether the holding I'm sorry? Go ahead. Finish. Sure, sure. Whether that was a holding or whether it was simply an indication that in any event this court had taken the position that the motivating factor standard was at least that there was a split in the circuits regardless of the strength of the analysis of those decisions or whether or not the courts really engaged in the kind of analysis that was appropriate nonetheless other circuits are applying the motivating factor standard and finally I would just note that the language of the false claims act is distinguishable from the ADEA and title 7 and in that the various provision of 3730 that addresses retaliation uses both the because of language and the but for language and therefore there is an argument which has not been addressed by the few circuit courts that have addressed whether or not Nasser should apply in the false claims act context and so I think there would be reason there to that it's not plain on its face that in fact Nasser must apply to the false claims act and therefore I do not believe that the district court committed plain error in charging the jury in the manner in which she did I would like you to spend one minute on the  that you are investigating and under Smith Jenkins the question is whether or not the district court all together advocated and here there is substantial discussion on the nature of Dr. Roberts expert opinion the assumptions that were made in that opinion and she said at that point in time that she understood the problem that the council had with that and she said I am not confident at the moment to say how far she can go without having heard the evidence then comes in Dr. Roberts takes the stand she does conduct a test where she clearly satisfies herself that Dr. Roberts is qualified to testify and the testimony comes in there is substantial evidence to suggest that she performed that test well she did and that is why   testify in the best manner that she can to testify in the best manner that she can testify in the best  manner that  can to please witness and testify in the best manner that she can to testify in the best manner in the fastest manner that she can to testify in the best manner  she can to testify in the fastest manner in the best manner that she can to testify in the best manner that she can to   the   that she can testify in the fastest manner that she can testify in the best manner that she can testify  the best manner that    in the fastest manner that she can testify in the fastest manner that she can testify in the fastest manner that she can testify in the fastest manner  she can testified